1

2   Benjamin T. Diggs (Bar No. 245904)
    HOGAN LOVELLS US LLP
3   3 Embarcadero Center, Suite 1500
    San Francisco, CA 94111
4   Telephone:  +1 415 374 2304
    Facsimile:  +1 415 374 2499
5   benjamin.diggs@hoganlovells.com

6   Robert B. Wolinsky (*pro hac vice*)
    HOGAN LOVELLS US LLP
7   Columbia Square
    555 Thirteenth Street, NW
8   Washington, DC 20004
    Telephone: +1 202 637 8895
9   Facsimile: +1 202 637 5910
    robert.wolinsky@hoganlovells.com
10
    George W. Ingham (*pro hac vice*)
11  HOGAN LOVELLS US LLP
    Park Place II
12  7930 Jones Branch Drive, Ninth Floor
    McLean, VA 22102
13  Telephone: +1 703 610 6286
    Facsimile: +1 703 610 6200
14  george.ingham@hoganlovells.com

15  Attorneys for Defendant
    WACKER CHEMICAL CORPORATION[1]

16
                    UNITED STATES DISTRICT COURT
17
                  NORTHERN DISTRICT OF CALIFORNIA
18
                        SAN JOSE DIVISION
19

20  ADEMA TECHNOLOGIES, INC., D/B/A        Case No. 5:13-cv-05599-LHK
    GLORIA SOLAR (USA),
21                                          **MEMORANDUM OF POINTS AND
                Plaintiff,                  AUTHORITIES IN SUPPORT OF
22                                          MOTION TO DISMISS**
          v.
23                                          Date:      May 15, 2014
    WACKER CHEMIE AG and WACKER            Time:      1:30 p.m.
24  CHEMICAL CORPORATION,                  Courtroom: Courtroom 4

25              Defendants.                 Honorable Lucy H. Koh

26

27  ─────────────────────
    [1] This motion to dismiss is brought only by Defendant Wacker Chemical Corporation. Defendant
28  Wacker Chemie AG has not been served with process.

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND .....................................................................................................2

III.  ARGUMENT AND AUTHORITIES ......................................................................3

    A.   The Supply Agreement's Forum Selection Clause Requires Dismissal Of
        This Action Even Against Wacker Chemical. ..........................................................3

    B.   The Court Should Dismiss All Counts Against Wacker Chemical For
        Failure To Adequately State A Claim. ....................................................................7

        1.   All Claims Against Wacker Chemical Should Be Dismissed Due
            To Plaintiff's Failure To Plead Any Specific Facts With Respect To
            Wacker Chemical. ..............................................................................7

        2.   The Court Also Should Dismiss Plaintiff's Claims Under California
            Law..................................................................................................9

            a.   Counts I And II Should Be Dismissed Because Wacker
                Chemical Is Not A Party To The Supply Agreement. ...................9

            b.   Plaintiff's Breach Of Contract Claim (Count I) Should Be
                Dismissed Because Plaintiff Cannot Be Excused From The
                Very Risk It Assumed In The Supply Agreement. .........................9

            c.   Plaintiff's Breach Of The Covenant Of Good Faith And Fair
                Dealing Claim (Count II) Should Be Dismissed Because It
                Attempts To Impose Duties Unrelated To The Supply
                Agreement. ...................................................................................12

            d.   Plaintiff's Unjust Enrichment And Restitution Claim (Count
                III) Should Be Dismissed Because There Is No Such Cause
                Of Action And The Count Is Improperly Pled..............................13

            e.   Plaintiff's Conversion Claim (Count IV) Should Be
                Dismissed Because Plaintiff Fails To Plead The Elements
                Of Conversion. .............................................................................14

            f.   Plaintiff's UCL Claim (Count V) Should Be Dismissed
                Because Of The German Choice Of Law Provision And
                Because It Fails To Allege Essential Elements Under The
                Statute..........................................................................................15

            g.   Plaintiff's Aiding And Abetting And Declaratory Judgment
                Claims (Counts VI and VII) Should Be Dismissed Because
                They Are Derivative Of Plaintiff's Other Inadequate Legal
                Theories.......................................................................................19

IV.   CONCLUSION......................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">CASES</span>

*Argoquest Holdings, LLC v. Israel Disc. Bank, Ltd.*,
   228 F. App'x 733 (9th Cir. 2007) ........................................................................ 4

*Argueta v. Banco Mexicano, S.A.*,
   87 F.3d 320 (9th Cir. 1996).............................................................................. 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................... 7, 8

*Assilzadeh v. Cal. Fed. Bank*,
   82 Cal. App. 4th 399 (2000)........................................................................... 18

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W.D. Tex.*,
   134 S. Ct. 568 (2013) ................................................................................... 4, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 7

*Benjamin v. Allied Interstate*,
   No. 11-cv-881, 2012 WL 1815944 (D. Nev. May 17, 2012)................................... 8

*Bremen v. Zapata Off-Shore, Inc.*,
   407 U.S. 1 (1972)......................................................................................... 4

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992) ............................................................................... 12, 13

*Cedars-Sinai Med. Ctr. v. Global Excel Mgmt., Inc.*,
   No. 9-cv-3627, 2010 WL 5572079 (C.D. Cal. Mar. 19, 2010)............................ 5, 6

*Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .............................................................................. 16, 17

*Democracy Council of Cal. v. WRN Ltd., PLC*,
   No. 10-cv-5088, 2010 WL 3834035 (C.D. Cal. Sept. 27, 2010) ............................ 5

*E. Air Lines, Inc. v. McDonnell Douglas Corp.*,
   532 F.2d 957 (5th Cir. 1976)........................................................................... 11

*Egan v. Mutual of Omaha Ins. Co.*,
   24 Cal. 3d 809 (1979) .................................................................................... 9

*Farmers Ins. Exch. v. Zerin*,
   53 Cal. App. 4th 445 (1997)............................................................................ 15

*Feld v. Am. Exp. Co.*,
  No. 9-cv-7202, 2010 WL 9593386 (C.D. Cal. Jan. 25, 2010) ................................................. 16

*Fisherman's Wharf Bay Cruise Corp. v. Superior Court*,
  114 Cal. App. 4th 309 (2003) .................................................................................................. 17

*Foley v. Interactive Data Corp.*,
  47 Cal. 3d 654 (1988) .............................................................................................................. 12

*Foster v. SCME Mortg. Bankers, Inc.*,
  No. 10-cv-518, 2011 WL 1363802 (E.D. Cal. Apr. 11, 2011) ................................................. 18

*Grant v. Aurora Loan Servs., Inc.*,
  736 F. Supp. 2d 1257 (C.D. Cal. 2010) ................................................................................... 12

*Gutierrez v. Wells Fargo & Co.*,
  622 F. Supp. 2d 946 (N.D. Cal. 2009) ..................................................................................... 15

*Guz v. Bechtel Nat'l, Inc.*,
  24 Cal. 4th 317 (2000) ............................................................................................................. 12

*Henry v. Associated Indem. Corp.*,
  217 Cal. App. 3d 1405 (1990) ................................................................................................... 9

*Herskowitz v. Apple Inc.*,
  940 F. Supp. 2d 1131 (N.D. Cal. 2013) (Koh, J.) ................................................................... 13

*Himmelberger v. Lamarque*,
  No. 3-cv-3011, 2008 WL 5234046 (N.D. Cal. Dec. 15, 2008) ................................................. 8

*Horsemen's Benevolent & Protective Assn. v. Valley Racing Ass'n*,
  4 Cal. App. 4th 1538 (1992) ............................................................................................. 10, 11

*In re Apple In-App Purchase Litig.*,
  855 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................................................................... 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  MDL No. 1827, 2011 WL 4345435 (N.D. Cal. Sept. 15, 2011) ............................................. 13

*Kunert v. Mission Fin. Servs. Corp.*,
  110 Cal. App. 4th 242 (2003) .................................................................................................. 17

*Longhurst v. JP Morgan Chase Bank, N.A.*,
  No. 11-2604, 2012 WL 2912335 (E.D. Cal. Jul. 16, 2012) ................................................... 19

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) ................................................................................................. 4, 5

*McKell v. Wash. Mut., Inc.*,
  142 Cal. App. 4th 1457 (2006) ................................................................................................ 15

*Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.*,
   913 F. Supp. 2d 780 (N.D. Cal. 2012) ..................................................................... 18

*Murphy v. Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2004) ............................................................................ 5

*Myklatun v. Flotek Indus., Inc.*,
   734 F.3d 1230 (10th Cir. 2013) .......................................................................... 18

*N. Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*,
   799 F.2d 265 (7th Cir. 1986) (Posner, J.) ..................................................... 10, 11

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal. 4th 459 (1992) ........................................................................................ 16

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
   150 Cal. App. 4th 384 (2007) ........................................................................... 15

*Petersen v. Boeing Co.*,
   715 F.3d 276 (9th Cir. 2013) .......................................................................... 5, 6

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ........................................................................................... 6

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
   11 Cal. App. 4th 1026 (1992) ........................................................................... 13

*Richards v. Lloyd's of London*,
   135 F.3d 1289 (9th Cir. 1998) ........................................................................ 5, 6

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974) ........................................................................................... 4

*Schneider v. Bank of Am. N.A.*,
   No. 11-cv-2953, 2012 WL 761975 (E.D. Cal. 2012) ........................................ 8

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ........................................................................................... 4

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ....................................................................... 8, 18

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ........................................................................... 7

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
   252 F. App'x 123 (9th Cir. 2007) .................................................................... 14

*Twin City Fire Ins. Co., Inc. v. Mitsubishi Motors Credit of Am., Inc.*,
   No. 4-cv-43, 2005 WL 5981066 (C.D. Cal. June 20, 2005) .............................. 18

-iv-

*Vu v. Cal. Comm. Club,*
    58 Cal. App. 4th 229 (1997) ............................................................................................... 15

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,*
    178 F. Supp. 2d 1099 (C.D. Cal. 2001) ............................................................................ 11

*Williamson v. Reinalt-Thomas Corp.,*
    No. 11-cv-3548, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) (Koh, J.) ............................. 13

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) ........................................................................................... 19

STATUTES

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................................................. 5, 6, 16

Cal. Civ. Code § 1671 ................................................................................................................. 14

Cal. Civ. Code § 3275 ................................................................................................................. 14

Cal. Civ. Code § 3369 ................................................................................................................. 14

Cal. Com. Code § 2615 ............................................................................................................... 10

Cal. Com. Code § 2718(1) .......................................................................................................... 14

OTHER AUTHORITIES

RESTATEMENT (SECOND) OF CONTRACTS § 261 ............................................................................. 10

## **STATEMENT OF ISSUES TO BE DECIDED**

1.      Should the Court dismiss the Complaint against Defendant Wacker Chemical Corporation when the Supply Agreement—the agreement upon which Plaintiff bases all of its claims—designates Munich, Germany as the exclusive forum for litigation?

2.      If the Court declines to enforce the forum selection clause, should it nonetheless dismiss all of the claims against Defendant Wacker Chemical Corporation when (a) Plaintiff fails to plead any specific actionable facts as to Wacker Chemical Corporation; (b) Wacker Chemical Corporation is not a party to the Supply Agreement; (c) Plaintiff has brought a claim under a California statute despite the Supply Agreement's German choice of law clause; and (d) Plaintiff's claims fail to state a claim under California law even if Wacker Chemical Corporation is treated as a party to the Supply Agreement.

## I.   INTRODUCTION

This lawsuit is about a long-term supply agreement (the "Supply Agreement," ECF Doc. #8-4) by which Plaintiff Adema Technologies, Inc. agreed to purchase polycrystalline silicon ("polysilicon") from German Defendant Wacker Chemie AG ("Wacker Germany").   Wacker Germany has not been served with the Complaint, and therefore is not a party to this motion.   The Supply Agreement has broad German forum selection and choice of law provisions that cover all of the claims brought by Plaintiff.   Wacker Germany already has brought suit against Plaintiff in Munich Germany due to Plaintiff's unjustified refusal to perform under the Supply Agreement. Defendant Wacker Chemical Company ("Wacker Chemical") is not a party to the Supply Agreement.   Nonetheless, Plaintiff has named Wacker Chemical as a defendant based on a factually unsupported theory that Wacker Chemical has "aided and abetted" Wacker Germany. Under Supreme Court and Ninth Circuit precedent, the German forum selection clause applies to all of Plaintiff's claims, including those brought against Wacker Chemical, even though it is not a party to the Supply Agreement.   For this reason, the Court should dismiss the Complaint without reaching the merits under the doctrine of *forum non conveniens*.

However, if the Court does reach the merits, all of Plaintiff's claims should be dismissed even under California law.[2]   As an initial matter, Plaintiff has not alleged any facts to support its bare assertion that Wacker Chemical "aided and abetted" Wacker Germany.   Second, Wacker Chemical was not a party to the Supply Agreement, so Counts I and II of the Complaint for breach of contract and breach of the covenant of good faith and fair dealing should be dismissed because they require the existence of a contractual relationship.   Finally, all five of Plaintiff's substantive causes of action fail to state essential elements that require their dismissal.   By agreeing to purchase polysilicon at a fixed price, Plaintiff agreed to bear the risk that the market

---

[2] Plaintiff appears to have pled its causes of action under California law despite the German choice of law provision in the Supply Agreement.   While this Court is able to consider claims under German law, the forum selection clause should be enforced and Plaintiff should be required to bring German law claims in Germany.   Wacker Chemical has addressed Plaintiff's claims under California law in case the Court determines that neither the forum selection nor choice of law clauses apply.   If the Court determines that the choice of law clause applies, but the forum selection clause does not, Plaintiff's claims should also be dismissed under German law and Wacker Chemical will move for judgment on the pleadings on that basis.

1  price of polysilicon might fall.  Plaintiff benefited when the market price was high, but now
2  argues that it can escape its obligations under the Supply Agreement because the price of
3  polysilicon has fallen.  The law does not allow Plaintiff to escape its commitments on this basis,
4  nor does the law prohibit Defendants from making prudent business decisions in order to compete
5  in the world market as Plaintiff contends.

6  **II.    BACKGROUND**

7        Plaintiff alleges that it manufactures and sells solar panels and uses polysilicon as an input
8  in its manufacturing process.  Compl. ¶ 1.  On March 13, 2007, Plaintiff entered into the Supply
9  Agreement with Wacker Germany in which Plaintiff agreed to make monthly purchases of
10 polysilicon from Wacker Germany at a fixed price for a six-year period.  Supply Agreement §§ 1,
11 3.2, 4.3, App. A.  Wacker Chemical is not a party to the Supply Agreement.

12       Specifically, the Supply Agreement provided that, from 2011 through 2016, Plaintiff
13 would pay 42 €/kg for between 200,000 kg and 350,000 kg of polysilicon per year, divided into
14 equal monthly shipments. Supply Agreement, App. A. The Supply Agreement also required
15 Plaintiff to prepay a percentage of the purchase price. Supply Agreement § 2.1, App. A.
16 Significantly, if Plaintiff "fail[ed] to take the full amount of the agreed annual quantity in one
17 respective calendar year, WACKER [would] not have to repay the not absorbed outstanding pre-
18 payment (regarding the respective calendar year)[ and Plaintiff] also [would not] have the right to
19 set this prepayment against deliveries of the following year."  Supply Agreement, App. A.  The
20 Supply Agreement further provided that it "shall be construed and the legal relations between the
21 parties hereto shall be determined in accordance with the laws of Germany" and that the
22 "[e]xclusive place of jurisdiction shall be Munich."  Supply Agreement § 15.

23       According to Plaintiff, at the time the parties entered into the Supply Agreement and
24 agreed on a price of 42 €/kg, the spot price (*i.e.*, the current market price) of polysilicon was
25 approximately 200 €/kg, eventually climbing as high as 291 €/kg. Compl. ¶¶ 18, 23.  By January
26 2011, however, the spot price of polysilicon had dropped to just above 42 €/kg.  Compl. ¶ 23.  As
27 of the date Plaintiff filed the Complaint, Plaintiff alleges that the spot price of polysilicon was
28 approximately 13-14 €/kg.  Compl. ¶¶ 24, 32.

1    While the contract price was lower than the spot price, Plaintiff took delivery and

2    benefited.  However, it claims that when the spot price became lower than the contract price, the

3    effect was "devastating."  *See* Compl. ¶ 35.  In February 2012, Defendants effectively lowered

4    Plaintiff's per-kilogram price of polysilicon by providing additional quantities.  Compl. ¶ 36.

5    Yet, in March 2012, Plaintiff refused to accept shipments of polysilicon.  Compl. ¶ 40.  At this

6    point, Defendants informed Plaintiff that if Plaintiff intended to breach, Wacker Germany would

7    exercise its right under the Supply Agreement to retain portions of Plaintiff's prepayment each

8    month to account for damages that Wacker Germany incurred as a result of Plaintiff refusing to

9    honor the terms of the Supply Agreement.  Compl. ¶ 38.

10    On January 15, 2013, Wacker Germany informed Plaintiff that if Plaintiff would not

11    confirm its intent to comply with the terms of the Supply Agreement, Wacker Germany would be

12    forced to retain the remaining prepayment balance, and to seek to recover the damages that

13    exceeded Plaintiff's prepayment balance.  Exhibit A ¶ 3.  Plaintiff responded by claiming it was

14    excused from future performance under the Supply Agreement. Compl. ¶ 51. On March 4, 2013,

15    Wacker Germany filed suit against Plaintiff in Munich, Germany, the location specified in the

16    Supply Agreement.  Exhibit A ¶ 4.  Despite the lawsuit in Germany and the German forum

17    selection clause, on December 4, 2013, Plaintiff filed suit against Defendants in this Court.

18    **III.    ARGUMENT AND AUTHORITIES**

19    **A.    The Supply Agreement's Forum Selection Clause Requires Dismissal Of This**
20    **Action Even Against Wacker Chemical.**

21    Plaintiff's claims against Wacker Chemical should be dismissed under the doctrine of

22    *forum non conveniens* because the Supply Agreement—the central agreement upon which

23    Plaintiff bases its claims—designates Munich, Germany as the "exclusive place of jurisdiction" to

24    adjudicate the terms of the agreement "and the legal relations between the parties hereto."  Supply

25    Agreement § 15.   The forum selection clause applies to Plaintiff's claims against Wacker

26    Chemical, even though Wacker Chemical is not a party to the Supply Agreement.  As the Ninth

27    Circuit has explained, when "the alleged conduct of the [defendant] non-parties is so closely

28    related to the contractual relationship," the "forum selection clause applies to all defendants."

-3-

1   *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).  That is the case here,

2   where <u>all</u> of Plaintiff's allegations against both Wacker Germany and Wacker Chemical are based

3   on the Supply Agreement. *See, e.g.*, Compl. ¶ 21 (alleging that Wacker Chemical "was the

4   primary point of contact for Adema *under the Supply Agreement*" (emphasis added)).

5       The Supreme Court has held that a party that seeks dismissal due to a forum selection

6   clause may file a motion to dismiss for *forum non conveniens. Atl. Marine Constr. Co., Inc. v.*

7   *U.S. Dist. Court for the W.D. Tex.*, 134 S. Ct. 568, 580 (2013).  Ordinarily, the *forum non*

8   *conveniens* analysis entails a balancing of a variety of factors, and a defendant seeking to argue

9   for dismissal bears a "heavy burden" in opposing a plaintiff's chosen forum.  *Sinochem Int'l Co.*

10   *Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  A forum selection clause,

11   however, changes the analysis.  If the parties have agreed to a forum selection clause, then "the

12   plaintiff's choice of forum merits no weight" and "the plaintiff must bear the burden of showing

13   why the court should not" enforce the forum selection clause.  *Atl. Marine*, 134 S. Ct. at 582; *see*

14   *also Argoquest Holdings, LLC v. Israel Disc. Bank, Ltd.*, 228 F. App'x 733 (9th Cir. 2007)

15   ("[T]he negotiated contract, which lies at the center of the parties' relationship, provides that the

16   sole forum would be the courts of Israel and that the law of Israel would apply. These provisions

17   clearly outweigh Argoquest's choice of forum.").  Moreover, a forum selection clause in an

18   international agreement such as the one at issue here is "prima facie valid and should not be set

19   aside unless the party challenging the enforcement of such a provision can show it is

20   unreasonable under the circumstances." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th

21   Cir. 1996); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974) ("A contractual

22   provision specifying in advance the forum in which disputes shall be litigated and the law to be

23   applied is . . . an almost indispensable precondition to achievement of the orderliness and

24   predictability essential to any international business transaction."); *Bremen v. Zapata Off-Shore,*

25   *Inc.*, 407 U.S. 1, 10 (1972) ("In the light of present-day commercial realities and expanding

26   international trade[,] . . . [a] forum [selection] clause should control absent a strong showing that

27   it should be set aside.").

28

A forum selection clause is enforceable if it is reasonable under a three-part test. *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013). Specifically, "there are three reasons a forum selection clause may be unenforceable: (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought." *Id.* (quotation marks omitted).

The forum selection clause in this case is enforceable and requires dismissal of all claims.[3] First, Plaintiff makes no allegation—nor could it—that the forum selection clause was the product of fraud or overreaching. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004) ("[A] differential in power or education . . . will not vitiate a forum selection clause."); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) ("For a party to escape a forum selection clause on the grounds of fraud, it must show that the *inclusion of that clause* in the contract was the product of fraud or coercion." (emphasis in original and quotation marks omitted)).

Second, Plaintiff has no argument that it will be deprived of its day in court if it were required to litigate this case in Germany. In fact, Wacker Germany already has initiated a lawsuit against Plaintiff in Germany; Plaintiff can litigate its claims there. *See Democracy Council of Cal. v. WRN Ltd., PLC*, No. 10-cv-5088, 2010 WL 3834035, at *5 (C.D. Cal. Sept. 27, 2010) (rejecting argument that plaintiff would be deprived of a "day in court" when litigation in a

---

[3] The forum selection clause covers all of the claims asserted by Plaintiff because it applies to "[t]his Agreement" and "the legal relations between the parties." Supply Agreement § 15. The Ninth Circuit has explained that "forum selection clauses can be equally applicable to contractual and tort causes of action" so long as "[e]ach of the[ ] claims relates in some way to the rights and duties enumerated in the . . . contract." *Manetti-Farrow*, 858 F.2d at 514. Here, all of Plaintiff's causes of action are explicitly based on the contractual relationship between it and Wacker Germany and each Count specifically refers to and relies on the existence of the Supply Agreement. *See, e.g.*, *Cedars-Sinai Med. Ctr. v. Global Excel Mgmt., Inc.*, No. 9-cv-3627, 2010 WL 5572079, at *1, *6 (C.D. Cal. Mar. 19, 2010) (holding forum selection clause covered claims for (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of implied contract; (4) quantum meruit; (5) unjust enrichment; and (6) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*, because "all of the claims . . . trace their origin and genesis to the existence of the [contract]"). Here, the forum selection clause applies to all claims because Plaintiff would not have made any claims against Defendants had Plaintiff not entered into the Supply Agreement with Wacker Germany.

foreign forum had already begun), *aff'd*, 471 F. App'x 802 (9th Cir. 2012). The simple fact that it would be more affordable or convenient for Plaintiff to litigate its claims in its home state is insufficient to show it will be deprived of its day in court. *See Atl. Marine*, 134 S. Ct. at 582 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). Moreover, the standard to prove that a party would be deprived of his day in court due to a forum selection clause is high. *See, e.g.*, *Petersen*, 715 F.3d at 281 (explaining that party is not deprived of his day in court unless "wholly foreclosed from litigating his claim" in the selected forum).

Third, enforcement of the forum selection clause will not contravene a strong public policy of this forum. Arguments that a forum selection clause should not be enforced because of "public interest factors" will "rarely" prevail "except in unusual cases." *Atl. Marine*, 134 S. Ct. at 582. This is not an unusual case. The Ninth Circuit has previously enforced forum selection clauses in cases involving claims such as breach of contract and even claims of fraud. *See, e.g.*, *Richards*, 135 F.3d 1289. Moreover, the fact that a German court applying German law may not permit Plaintiff to bring an unfair competition claim under California Business and Professions Code §§ 17200 *et seq.* does not matter. That statute does not prohibit parties from agreeing to forum selection clauses. *See Cedars-Sinai Med. Ctr. v. Global Excel Mgmt., Inc.*, No. 9-cv-3627, 2010 WL 5572079, at *9 (C.D. Cal. Mar. 19, 2010) (enforcing forum selection clause despite section 17200 claim). More generally, the fact that a party may not bring a particular cause of action is not a sufficient reason to invalidate a forum selection clause. *Richards*, 135 F.3d at 1296 ("While it is true that the Lloyd's Act immunizes Lloyd's from many actions possible under our securities laws, Lloyd's is not immune from the consequences of actions committed in bad faith, including fraud."); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247 (1981) ("The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry.").

**B.      The Court Should Dismiss All Counts Against Wacker Chemical For Failure To Adequately State A Claim.**

While the Court should dismiss this lawsuit based on the Supply Agreement's forum selection clause, if the Court does not do so, it should still dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted.

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must accept factual allegations as true for purposes of a motion to dismiss, this tenet is "inapplicable to legal conclusions." *Id.* After stripping away the "conclusory statements" in the complaint, the remaining factual allegations must do more than "create[] a suspicion of a legally cognizable right of action"; they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (quotation marks omitted).  In making this "context-specific" determination, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  This analysis provides a critical gatekeeping function, because claims must be sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**1.      All Claims Against Wacker Chemical Should Be Dismissed Due To Plaintiff's Failure To Plead Any Specific Facts With Respect To Wacker Chemical.**

Plaintiff has failed to allege sufficient facts to adequately allege any of its claims against Wacker Chemical.  The only factual allegations related to Wacker Chemical are that Wacker Chemical became the "primary point of contact for Adema" after deliveries of polysilicon under the Supply Agreement commenced, Compl. ¶ 21, that Wacker Chemical agreed to effectively lower the price of polysilicon under the Supply Agreement in February 2012, Compl. ¶ 36, and that Wacker Chemical's representatives demanded that Plaintiff pay for shipments Plaintiff was obligated to pay for under the Supply Agreement, Compl. ¶ 39.  These allegations—none of which state unlawful conduct—simply claim that Wacker Chemical had some communications

with Plaintiff relating to the Supply Agreement.  Even assuming arguendo that these facts were true, they are not sufficient to adequately allege any claim against Wacker Chemical.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (quotation marks omitted)); *Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013) (dismissing claim when other obvious, lawful explanations for the actions alleged meant that the claim was only "possible," not "plausible"); *see also Benjamin v. Allied Interstate*, No. 11-cv-881, 2012 WL 1815944 at *2 (D. Nev. May 17, 2012) ("By failing to allege that Defendant, as opposed to Plaintiff's original creditor, added the alleged additional amounts, Plaintiff's complaint is 'merely consistent' with Defendant's liability and 'stops short of the line between possibility and plausibility of entitlement to relief.'" (quoting *Iqbal*, 556 U.S. at 678)).

Plaintiff's theory seems to be that it can bring its claims against both Wacker Germany and Wacker Chemical because Wacker Chemical "aided and abetted" Wacker Germany in all of the allegations of the Complaint. *See* Compl. ¶ 90 ("Wacker Chemical knowingly aided and abetted Wacker AG's wrongdoing alleged herein.").  But the Complaint fails to allege any facts supporting how Wacker Chemical "aided and abetted" Wacker Germany.  Rather, the Complaint simply states that virtually all acts taken were taken by "Defendants" collectively without explaining Wacker Chemical's role.  Such generalized allegations are not sufficient to adequately allege Plaintiff's claims.  *See Schneider v. Bank of Am. N.A.*, No. 11-cv-2953, 2012 WL 761975, at *4 (E.D. Cal. 2012) (dismissing complaint where "the amended complaint frequently uses the non-specific identifier "defendants" . . . .  For example, plaintiff merely alleges that the . . . "[d]efendants collectively" were " 'aiding and abetting' each other's unlawful acts"); *Himmelberger v. Lamarque*, No. 3-cv-3011, 2008 WL 5234046, at *3 (N.D. Cal. Dec. 15, 2008) (dismissing complaint that merely "allege[d] conduct by 'defendants' as a group and does not specify action by any individual defendants").

2.     **The Court Also Should Dismiss Plaintiff's Claims Under California Law.**

If the Court determines that it is appropriate to consider the merits of Plaintiff's claims under California law, all of the claims still must be dismissed for failure to state a claim upon which relief may be granted.

a.     **Counts I And II Should Be Dismissed Because Wacker Chemical Is Not A Party To The Supply Agreement.**

Counts I and II against Wacker Chemical should be dismissed because Wacker Chemical is not a party to the Supply Agreement—rather, the Supply Agreement is an agreement between Plaintiff and Wacker Germany.  Accordingly, its breach of contract claim and claim for breach of the covenant of good faith and fair dealing based on that contract cannot survive against Wacker Chemical.  *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 824 (1979) (concluding that, when two insurance agents who were not parties to an insurance contract were sued for a breach of the covenant of good faith and fair dealing on that contract, "[b]ecause the only ground for imposing liability on either [agent] is breach of that promise, the judgments against them as individuals cannot stand"); *Henry v. Associated Indem. Corp.*, 217 Cal. App. 3d 1405, 1416-17 (1990) ("There was no direct contractual relationship between Henry and Underwriters from which either a breach of the covenant of good faith and fair dealing or a breach of contract action could properly spring.").

b.     **Plaintiff's Breach Of Contract Claim (Count I) Should Be Dismissed Because Plaintiff Cannot Be Excused From The Very Risk It Assumed In The Supply Agreement.**

Even if Plaintiff's breach of contract claim survives the fact that Wacker Chemical is not a party to the Supply Agreement, that claim fails on the merits.  Plaintiff's argument is that a drop in the price of polysilicon excused its performance, under either the common law doctrines of excuse or the force majeure provisions of the Supply Agreement.  Compl. ¶¶ 46-52, 60-61.  Accordingly, Plaintiff argues that it was a breach of contract for Defendants to retain Plaintiff's prepayment, and to attempt to require Plaintiff to perform when its performance was allegedly excused.  This argument fails because neither the common law excuse doctrines nor the Supply

-9-

Agreement's boilerplate force majeure provision excuses Plaintiff from the very risk it assumed when it entered into the Supply Agreement.

The common law excuse doctrines permit a party to avoid performing its contractual obligations in certain limited circumstances. The only one of the doctrines that conceivably could be relevant here—impracticability—excuses a party's performance when it "is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, . . . unless the language or the circumstances indicate the contrary." RESTATEMENT (SECOND) OF CONTRACTS § 261; *see also* Cal. Com. Code § 2615. The excuse doctrines do not, however, excuse a "risk that the promisor had assumed." *N. Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 277 (7th Cir. 1986) (Posner, J.). Here, Plaintiff is attempting to be excused from the burdens of a risk that it expressly assumed in the Supply Agreement. The Supply Agreement is a fixed-price contract: meaning that Plaintiff contracted to buy polysilicon at a specific price notwithstanding potential market fluctuations. As courts have repeatedly explained, the purpose of such a contract is to allocate risk between the buyer and seller. For example, in *Northern Indiana Public Service Company*, the court explained that "a fixed-price contract is an explicit assignment of the risk of market price increases to the seller and the risk of market price decreases to the buyer." *Id.* at 278. Thus, by signing a fixed-price contract, the buyer "gambled that . . . costs would rise rather than fall over the life of the contract; for if they rose, the contract price would give it an advantage over its (hypothetical) competitors who would have to buy fuel at the current market price." *Id.* at 275. "If . . . the buyer forecasts the market incorrectly and therefore finds himself locked into a disadvantageous contract, he has only himself to blame and cannot shift the risk back to the seller by invoking impossibility or related doctrines." *Id.* at 277; *see also Horsemen's Benevolent & Protective Assn. v. Valley Racing Ass'n*, 4 Cal. App. 4th 1538, 1565 (1992) (citing and quoting the above-discussed proposition from *Northern Indiana Public Service Company* with approval); Cal. Com. Code § 2615, cmt. 4 ("Neither is a rise or a collapse in the market in itself a[n excuse], for that is exactly the type of business risk which business contracts made at fixed prices are intended to cover.").

While it is possible to broaden a party's excuse right by including a force majeure clause in a contract, a boilerplate force majeure clause provides no additional protection beyond the common law excuse doctrines. *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1109-10 (C.D. Cal. 2001); *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976) (applying California law) ("[I]f a promisor desires to broaden the protections available under the excuse doctrine he should provide for the excusing contingencies with particularity and not in general language."). Particularly in the context of a fixed-price contract, parties must use clear and explicit language in order for force majeure to apply as a result of a change in market prices. This is because "'[a] force majeure clause interpreted to excuse the buyer from the consequences of the risk he expressly assumed would nullify a central term of the contract.'" *Horsemen's Benevolent & Protective Ass'n*, 4 Cal. App. 4th at 1565 (quoting *N. Indiana Pub. Serv. Co.*, 799 F.2d at 275).

The Supply Agreement's force majeure clauses—contained in the Supply Agreement and the incorporated General Conditions of Sale—are boilerplate. *See* Supply Agreement § 9; App. B § 7 (incorporated into Supply Agreement).[4]  Neither provide any specific language that excuses Plaintiff from performance due to a drop in the price of polysilicon.  Nor does Plaintiff point to any such language.  Plaintiff alleges that "the major price dislocation in the spot market for polysilicon . . . is an act of Force Majeure . . . and tantamount to a disruption in supply." Compl. ¶ 49.  But Plaintiff provides no support for equating a decreased spot price to "a disruption in supply," nor is there language in the force majeure clauses that provides that a disruption in supply of polysilicon to Plaintiff beyond "operation or transport interruptions" (which plainly did not occur here) constitutes force majeure.  Therefore, no force majeure provision provides

---

[4] The Supply Agreement defines force majeure as follows: "The term Force Majeure shall include without limitation strike, labour dispute, lock out, fire, explosion, flood, war (accident), act of god or any other cause beyond the reasonable control of the affected party, whether similar or dissimilar to the causes enumerated above."  Supply Agreement § 9.2.  Likewise, the General Conditions of Sale provide: "Events of Force Majeure, in particular strikes, lock outs, operation or transport interruptions, including at [Wacker's] suppliers, shall suspend the contractual obligations of each party for the period of the disturbance and to the extent of its effects. Should the delays caused exceed a period of 6 weeks, both parties shall be entitled to cancel the contract, with respect to the contractual performance affected by such delays. No other claims exist." Supply Agreement, App. B § 7.

1  Plaintiff with any more excuse than the common law excuse doctrines.  Because Plaintiff has no

2  excuse under these doctrines, its breach of contract claim should be dismissed.[5]

3
          c. **Plaintiff's Breach Of The Covenant Of Good Faith And Fair Dealing
             Claim (Count II) Should Be Dismissed Because It Attempts To Impose
4            Duties Unrelated To The Supply Agreement.**

5        Even if Plaintiff's breach of the covenant of good faith and fair dealing claim survives the

6  fact that Wacker Chemical is not a party to the Supply Agreement, Plaintiff's claim fails because

7  Plaintiff is attempting to impose an obligation on Wacker Chemical that is entirely unrelated to

8  the Supply Agreement.

9        While breach of the covenant of good faith and fair dealing does not require breach of "a

10 specific provision of the contract," it is nonetheless "universally recognized [that] the scope of

11 conduct prohibited by the covenant of good faith is circumscribed by the purposes and express

12 terms of the contract."  *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th

13 342, 373 (1992).  It does not "protect some general public policy interest not directly tied to the

14 contract's purposes."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988).  Thus, "in

15 order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific

16 contractual obligation from which the implied covenant of good faith and fair dealing arose must

17 be alleged."  *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1268 (C.D. Cal. 2010)

18 (quotation marks omitted).  The covenant therefore does not "impose substantive duties or limits

19 on the contracting parties beyond those incorporated in the specific terms of their agreement."

20 *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-350 (2000) (internal citations omitted).

21       Plaintiff's argument appears to be that Wacker Chemical has a duty, implied by the

22 Supply Agreement, to limit its production of polysilicon in an attempt to keep the price of

23 polysilicon high and thus maximize Plaintiff's gains under the Supply Agreement.  Compl. ¶¶ 65-

24 66.  But Plaintiff does not point to a single provision in the Supply Agreement from which this

25 implied duty arises.  This is not surprising, given that no provision in the Supply Agreement even

26

27 [5] Plaintiff also alleges that it was breach of contract for Defendants to retain Plaintiff's
   prepayment upon Plaintiff's failure to accept additional shipment of polysilicon. Compl. ¶ 61.
28 Such retention, however, was expressly authorized by the contract. Supply Agreement, App. A.

1    hints at the regulation of Wacker Chemical's (or Wacker Germany's) production decisions.  The

2    fact that Wacker Germany entered into an agreement to supply polysilicon to Plaintiff does not

3    implicitly create a far greater obligation for Wacker Germany or Wacker Chemical to alter the

4    scope of global business decisions for the benefit of Plaintiff.  *See Racine & Laramie, Ltd. v.*

5    *Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992) (rejecting the argument that the

6    covenant required a defendant to negotiate modifications to an express contract when "[t]he

7    provision closest to a possible obligation . . . falls far short of the imposition of any [such]

8    obligation").

9         Plaintiff also argues that Wacker Chemical (and Wacker Germany) breached the covenant

10   by retaining Plaintiff's prepayment after Plaintiff refused to accept additional shipments of

11   polysilicon.  Compl. ¶ 67.  But this is not actionable because the Supply Agreement permitted

12   retention of the prepayment.  Supply Agreement, App. A; *Carma*, 2 Cal. 4th at 374 ("As to acts

13   and conduct authorized by the express provisions of the contract, no covenant of good faith and

14   fair dealing can be implied which forbids such acts and conduct.").

15                  **d.  Plaintiff's Unjust Enrichment And Restitution Claim (Count III)**
16                       **Should Be Dismissed Because There Is No Such Cause Of Action And**
                         **The Count Is Improperly Pled.**

17        The Court should dismiss Plaintiff's unjust enrichment and restitution count, which is

18   flawed for two independent reasons.

19        First, there is no independent cause of action under California law for unjust enrichment

20   and restitution, particularly where, as here, the theory for such a cause of action is duplicative of

21   other causes of action raised in the Complaint. While there is a split of authority on whether

22   unjust enrichment and/or restitution is an independent cause of action, *In re TFT-LCD (Flat*

23   *Panel) Antitrust Litig.*, MDL No. 1827, 2011 WL 4345435, at *3 (N.D. Cal. Sept. 15, 2011), the

24   more recent and more persuasive authority holds that there is no such independent cause of

25   action.  *See, e.g.*, *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1148 (N.D. Cal. 2013) (Koh, J.)

26   (citing cases); *Williamson v. Reinalt-Thomas Corp.*, No. 11-cv-3548, 2012 WL 1438812, at *6

27   (N.D. Cal. Apr. 25, 2012) (Koh, J.) (same).

28

Second, even if a claim for unjust enrichment or restitution could stand as an independent cause of action, Plaintiff has failed to properly plead such a cause of action.  Such a claim must be based on quasi-contract and thus only can be made when there is no enforceable contract.  *See, e.g.*, *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) (holding unjust enrichment claim failed because plaintiff did "not allege that the contract is void, rescinded, or otherwise unenforceable, and [defendant] agrees that the express contract governs the relationship between the parties.").  Here, Plaintiff's unjust enrichment and restitution count relies on the existence of an enforceable contract, and does not allege that the contract is unenforceable.  *See* Compl. ¶¶ 72-74.  Therefore, even assuming that unjust enrichment or restitution is a viable cause of action, Plaintiff's claim fails because it is based on the existence of an enforceable contract as opposed to quasi-contract.

Finally, to the extent that Plaintiff is arguing in Count III that the contract contains an improper liquidated damages provision, Plaintiff is wrong.  A liquidated damages provision is "valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671; *see also* Cal. Com. Code § 2718(1) ("Damages for breach by either party may be liquidated in the agreement subject to and in compliance with Section 1671 of the Civil Code."). There is no allegation that the Supply Agreement's prepayment retention provision was unreasonable at the time it was made.[6]

### e.   Plaintiff's Conversion Claim (Count IV) Should Be Dismissed Because Plaintiff Fails To Plead The Elements Of Conversion.

Plaintiff claims that it was conversion for Defendants to refuse to return Plaintiff's prepayment.   Compl. ¶ 79.   Plaintiff's argument fails because it fails to properly plead conversion.

---

[6] Plaintiff's citations to Cal. Civ. Code §§ 3275 and 3369 for the proposition that California has a "clear public policy against forfeiture where there is no reasonable relation to the damage caused by a vendee's breach," Compl. ¶ 53, are inapposite. Section 3275 simply provides that a party may be relieved from a forfeiture "upon making full compensation to the other party." Section 3369 restricts the ability of a court to order "specific or preventive relief . . . to enforce a penalty or forfeiture . . . . except in a case of nuisance or as otherwise provided by law."

-14-

1   To state a claim for conversion of money, as Plaintiff attempts to do here, a plaintiff must

2   show that a specific, identifiable sum is involved.  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th

3   1457, 1491 (2006).  A cause of action for conversion cannot be "based on an overcharge," *id.* at

4   1492, or a generalized claim for money.  *Vu v. Cal. Comm. Club*, 58 Cal. App. 4th 229, 235

5   (1997); *see also Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) ("[A] mere

6   contractual right of payment, without more, will not suffice.").

7   Here, Plaintiff has simply failed to identify the "specific, identifiable sum" that Wacker

8   Chemical (or Wacker Germany) has converted.  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs,*

9   *Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 396 (2007) ("[A]ctions for the conversion

10   of money have not been permitted when the amount of money involved is not a definite sum.").

11   Instead, at best, Plaintiff is making an overcharge argument by contending that the amount of the

12   prepayment retained is excessive.  *See, e.g.*, Compl. ¶¶ 38, 41, 61, 67, 74. The context of a bank

13   and a depositor is analogous to the situation at issue here.  In *Gutierrez v. Wells Fargo & Co.*, 622

14   F. Supp. 2d 946 (N.D. Cal. 2009), several plaintiffs who had made deposits with a bank sued for

15   conversion when the bank charged them overdraft fees.  The plaintiffs' conversion claim was

16   dismissed on summary judgment because their essential argument was that the bank's practices

17   caused it to take "excessive overdraft fees from their accounts, or, in other words, they complain

18   about overcharging." *Id.* at 965.  Here, Plaintiff's conversion claim is, at best, like the plaintiffs'

19   faulty claim in *Gutierrez*, and therefore should be dismissed.

20   Moreover, for the reasons discussed *supra*, the prepayment was rightfully Defendants' to

21   keep, and for this reason, too, the conversion claim should be dismissed.

22   
23   **f.   Plaintiff's UCL Claim (Count V) Should Be Dismissed Because Of The German Choice Of Law Provision And Because It Fails To Allege Essential Elements Under The Statute.**

24   Count V should be dismissed because it is brought under California law, in contradiction

25   of the Supply Agreement's choice of law clause.  *See* Compl. ¶¶ 82-87.  The Supply Agreement

26   contains a choice of law clause providing that "[t]his Agreement shall be construed and the legal

27   relations between the parties hereto shall be determined in accordance with the laws of

28   

-15-

Germany."  Supply Agreement § 15; *see also Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992) ("[A] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates.").  Because the law of Germany applies, Plaintiff cannot bring its California statutory law claim.  *See, e.g., Feld v. Am. Exp. Co.*, No. 9-cv-7202, 2010 WL 9593386, at *4 n.6 (C.D. Cal. Jan. 25, 2010) (citing cases for the proposition that "choice-of-law clauses calling for the application of a different state's laws result in the dismissal of claims under California's [unfair competition law] have been enforced").

Moreover, Plaintiff appears to be claiming that Wacker Chemical violated Cal. Bus. & Prof. Code §§ 17200 *et seq.* by causing customers, including Plaintiff, to enter into long term agreements without telling them that Wacker Germany was about to increase production of polysilicon (which might contribute to lower prices).  Compl. ¶ 43.  Plaintiff alleges that this caused Defendants' customers, including Plaintiff, to breach their Supply Agreements and lose their prepayments.  *See* Compl. ¶¶ 55, 84.  These allegations do not adequately state a claim under Section 17200.

Section 17200 of the California Business & Professions Code prohibits "any unlawful, unfair or fraudulent business act or practice." *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  It "establishes three varieties of unfair competition—acts or practices that are unlawful, or unfair, or fraudulent." *Id.* While Plaintiff alleges that all three types of unfair competition have been committed, it alleges no facts that show Wacker Chemical (or Wacker Germany) has committed any "unlawful" or "fraudulent" acts.  Thus, the only potential UCL claim it has is that Wacker Chemical's alleged acts are "unfair."

California courts have expressed numerous tests for what constitutes "unfair" conduct, with the formulation of the test apparently differing depending on whether the plaintiff is claiming harm to consumers or competition.  While the definition of unfair competition appears broad under either definition, "it is not unlimited" and therefore "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair." *Cel-Tech*, 20 Cal. 4th at 182.

-16-

1    Significantly, conduct is not unfair simply because a party has acted "to meet the legal market

2    prices of competitors in the same locality or trade area;" courts cannot limit a company's actions

3    "as to make it unable to compete with its service rival."   *Cel-Tech*, 20 Cal. 4th at 187-88

4    (quotation marks omitted) (interpreting the UCL in light of statutes that apply to cellular

5    equipment sales).   Furthermore, a UCL claim is likely to fail if it complains that prices have

6    become "too low," as low prices ultimately benefit consumers and are "the very essence of

7    competition."   *Id.* at 189.   Moreover, "[c]ourts must not prohibit vigorous competition nor render

8    illegal any decision by a firm to cut prices in order to increase market share."   *Id.* (quotation

9    marks omitted); *see also Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 265 (2003)

10   (dismissing UCL claim and refusing to "balance" interests because it is not unfair for a business

11   to simply try to maximize its profits); *Fisherman's Wharf Bay Cruise Corp. v. Superior Court*,

12   114 Cal. App. 4th 309, 326 (2003) ("A firm that cuts its prices or substantially reduces its profit

13   margin is not necessarily engaging in predatory pricing. It may simply be responding to

14   competition or to a downturn in market demand.").

15          Plaintiff repeatedly concedes that Defendants' allegedly improper decision to increase the

16   supply of polysilicon—which resulted in *lower* prices—was simply an effort to compete with

17   worldwide competitors.   Compl. ¶ 34 (referring to Defendants' actions "as part of a battle with

18   competitors"), ¶ 42 (noting that Defendants' actions were taken "in a fight over market share with

19   Defendants' competitors"), ¶ 43 (noting that Defendants' increased production was part of "a

20   fight over global market share to supply polysilicon").   Given that increasing production and

21   therefore decreasing prices to meet competition is *not* a viable claim, Plaintiff's UCL claim

22   should be dismissed.

23          Furthermore, Plaintiff also appears to argue that Wacker Chemical had a duty to

24   disclose—during Wacker Germany and Plaintiff's negotiations for the Supply Agreement—that

25   the price of polysilicon might drop during the term of the contract as a result of Defendants'

26   potential future increase in polysilicon production. Yet even assuming that Wacker Chemical

27   knew about future production plans at the time Wacker Germany entered into the Supply

28   Agreement, Wacker Chemical had no duty to disclose.  For one, the parties negotiating the

-17-

1    Supply Agreement were Wacker Germany and Plaintiff.  *See* Compl. ¶ 21 (noting that Wacker

2    Chemical became Plaintiff's point of contact "*[a]fter* deliveries of polysilicon under the Supply

3    Agreement commenced" (emphasis added)); *cf. Foster v. SCME Mortg. Bankers, Inc.*, No. 10-cv-

4    518, 2011 WL 1363802, at *7 (E.D. Cal. Apr. 11, 2011) ("the UCL does not permit vicarious

5    liability").  Furthermore, even if Wacker Chemical had been at the bargaining table, it had no

6    duty to disclose.  There ordinarily is no affirmative duty to disclose facts during arms'-length

7    negotiations.  *See* 45 *Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.*, 913 F. Supp. 2d 780,

8    787 (N.D. Cal. 2012).

9          To be sure, there is a duty to disclose when a defendant has "exclusive knowledge of

10   material facts not known to the plaintiff."  *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d

11   1030, 1039 (N.D. Cal. 2012).  But, given that the price of polysilicon is determined by a myriad

12   of supply and demand factors—including production decisions by third-parties—Wacker

13   Chemical simply could not have known what the future price of polysilicon would be.  *Assilzadeh*

14   *v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 412 (2000) ("[V]ague and general speculation

15   concerning the possible market value of the unit at some unspecified future time" is not a material

16   fact.); *cf. Somers*, 729 F.3d at 964 ("[U]nder basic economic principles, increased competition . . .

17   generally lowers prices.").  The mere fact that Defendants may have planned to increase

18   production cannot be considered a "material" fact.  Indeed, a party is not required to disclose its

19   confidential future business plans to a counterparty simply because it is entering into a contractual

20   relationship with that party.  *See, e.g.*, *Myklatun v. Flotek Indus., Inc.*, 734 F.3d 1230, 1235 (10th

21   Cir. 2013) ("In essence, Plaintiffs are contending that a manufacturer has a generalized duty to

22   disclose all planning and development activities that could potentially affect a current distributor.

23   However, we conclude that neither the contract between the parties nor Oklahoma law imposes

24   such an obligation."); *Twin City Fire Ins. Co., Inc. v. Mitsubishi Motors Credit of Am., Inc.*, No.

25   4-cv-43, 2005 WL 5981066, at *2 (C.D. Cal. June 20, 2005) (stating, in insurance context: "any

26   plans by Defendant to change its loan and lease practices were open to Plaintiff's inquiry. Plaintiff

27   was bound to know this information and, because Plaintiff did not inquire about the issue,

28   Defendant had no duty to disclose any future plans.").  Because Wacker Chemical had no duty to

disclose its or Wacker Germany's future business plans, it cannot be considered an unfair business practice for Wacker Chemical not to so disclose. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.5 (9th Cir. 2012) ("[T]he failure to disclose a fact that a manufacturer does not have a duty to disclose . . . does not constitute an unfair or fraudulent practice.").

**g. Plaintiff's Aiding And Abetting And Declaratory Judgment Claims (Counts VI and VII) Should Be Dismissed Because They Are Derivative Of Plaintiff's Other Inadequate Legal Theories.**

Plaintiff's aiding and abetting and declaratory judgment counts are entirely derivative of Plaintiff's other claims. *See* Compl. ¶¶ 90, 93. Because Plaintiff's other claims should be dismissed for the reasons discussed *supra*, Plaintiff's aiding and abetting and declaratory judgment counts should be dismissed as well. *See Longhurst v. JP Morgan Chase Bank, N.A.*, No. 11-2604, 2012 WL 2912335, at *5 (E.D. Cal. Jul. 16, 2012) (dismissing declaratory judgment claim because it is entirely derivative of unsuccessful claim).

## IV. CONCLUSION

For all of the reasons set forth above, Defendant Wacker Chemical respectfully requests that this Court dismiss Plaintiff's Complaint against it.

Dated:  January 9, 2014

HOGAN LOVELLS US LLP

By:  _____/s/ *Benjamin T. Diggs*_____
Benjamin T. Diggs
(CA Bar # 245904)
benjamin.diggs@hoganlovells.com
Hogan Lovells US LLP
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone:  +1 415 374 2304
Facsimile:  +1 415 374 2499

Robert B. Wolinsky (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: +1 202 637 8895
Facsimile: +1 202 637 5910
robert.wolinsky@hoganlovells.com

George W. Ingham (*pro hac vice*)
HOGAN LOVELLS US LLP
Park Place II
7930 Jones Branch Drive, Ninth Floor
McLean, VA 22102
Telephone: +1 703 610 6286
Facsimile: +1 703 610 6200
george.ingham@hoganlovells.com

Attorneys for Defendant
WACKER CHEMICAL CORPORATION