UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADEMA TECHNOLOGIES INC., D/B/A GLORIA SOLAR (USA),<br><br>Plaintiff,<br><br>v.<br><br>WACKER CHEMIE AG AND WACKER CHEMICAL CORPORATION,<br><br>Defendants. | Case No. 13-cv-05599-BLF<br><br>**ORDER GRANTING MOTIONS TO DISMISS FOR FORUM NON CONVENIENS**<br><br>[Re: ECF 27, 33] |

In this breach of contract case, the Court must decide whether the action should be dismissed in light of a forum-selection clause in the underlying contract. Plaintiff Adema Technologies Inc., D/B/A Gloria Solar (USA) ("Plaintiff") filed the original action before this Court, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, and violation of California Business and Professions Code §§ 17200, *et seq.* ("UCL"). Defendants Wacker Chemie AG ("Wacker AG") and Wacker Chemical Corporation ("Wacker USA," collectively with Wacker AG, "Defendants") have each moved to dismiss the action on the basis of *forum non conveniens*, requesting that the Court enforce a forum-selection clause in the underlying contract identifying Munich, Germany as the exclusive forum for disputes relating to the contract. (*See* Wacker USA Mot., ECF 27; Wacker AG Mot., ECF 33) Plaintiff opposes these motions. (*See* Pl.'s Opp. to Wacker USA, ECF 31; Pl.'s Opp. to Wacker AG, ECF 36) On July 17, 2014, the Court heard oral argument on the motions, after which it deemed the matter submitted. For the reasons stated herein, Defendants' Motions to Dismiss are GRANTED on the basis of *forum non conveniens*.[1]

---

[1] Defendants raised, and the parties briefed, other grounds for dismissal under Federal Rule of

## I. BACKGROUND

On March 13, 2007, Plaintiff and defendant Wacker AG entered into a six year supply agreement for polycrystalline silicon (polysilicon), a raw material used in the manufacture of Plaintiff's solar panel products ("Supply Agreement").[2]  (Compl. ¶¶ 1, 4, ECF 1)  The Supply Agreement provided for monthly shipments of polysilicon from Wacker AG to Plaintiff for a fixed price of 42 €/kg over a six year period beginning January 2011.  (*Id.* ¶ 4, 20)  The Supply Agreement includes a forum-selection clause that designates Munich, Germany as the "exclusive place of jurisdiction."  (Wacker AG Mot. 3)  Although the Supply Agreement was executed between Plaintiff and Wacker AG, Plaintiff alleges that Wacker USA became the "primary point of contact" on the agreement after deliveries of polysilicon commenced, and that Wacker USA "administered deliveries, payments and negotiations from its California offices."  (Compl. ¶ 21)

At the time the parties executed the Supply Agreement, the spot price (i.e., the current market price) of polysilicon was approximately 200 €/kg, eventually climbing as high as 291 €/kg. (*Id.* ¶ 18, 23)  By January 2011, when Wacker AG began delivering polysilicon to Plaintiff under the Supply Agreement, the spot price had dropped to just above 42 €/kg.  (*Id.* ¶ 23)  By the time Plaintiff filed this lawsuit on December 4, 2013, the spot price was approximately 13 €/kg.  (*Id.* ¶ 24)  Needless to say, it eventually became economically unfeasible for Plaintiff to accept shipments from Wacker AG at the contract price.  (*Id.* ¶ 40)  On February 14, 2013, Plaintiff notified Defendants in writing that it was canceling the Supply Agreement, upon which Defendants allegedly confiscated the remainder of Plaintiff's prepayment deposit, totaling €14,670,400.  (*Id.* ¶ 6, 61)

Plaintiff alleges that the precipitous drop in polysilicon prices was due to Defendants' "long-term campaign of flooding global markets with polysilicon and pushing down the spot

---

Civil Procedure 12(b)(6).  Because the Court determines that the forum-selection clause is enforceable and mandates dismissal, the Court does not address those other arguments here.

[2] The parties filed the Supply Agreement at issue under seal.  (*See* ECF 8, 17)  References to the agreement are taken from Plaintiff's Complaint, and the parties' motion briefing, which are not under seal.

price." (*Id.* ¶ 22)  Defendants did not inform Plaintiff of this alleged campaign in 2007, when the parties executed the Supply Agreement.  (*Id.* ¶ 45)  Based on this theory, Plaintiff filed suit in this district, asserting claims against both Defendants for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, conversion, and unfair competition in violation of California's Unfair Competition Law ("UCL") at California Business and Professions Code §§ 17200, *et. seq.*  (*See id.*)  Though Wacker USA is not a party to the Supply Agreement, Plaintiff seeks to hold it liable on the theory that Wacker USA aided and abetted Wacker AG at all times in its allegedly unfair, illegal, and tortious conduct in connection with the Supply Agreement.  *(Id.* ¶¶ 21, 90)

In response, Defendants filed the motions before this Court, asking that the Court enforce the forum-selection clause in the Supply Agreement and dismiss this action on the doctrine of *forum non conveniens*.

## II.   LEGAL STANDARD

The enforceability of a contractual forum-selection clause in a diversity case is governed by federal law.  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).  A district court "has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

"[A] freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972).  As such, a forum-selection clause is prima facie valid unless a party challenging its enforcement can prove that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15.  Enforcement is unjust if it would "contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.*

The United States Supreme Court recently reiterated the importance of respecting a contractually valid forum-selection clause: "When parties have contracted in advance to litigate

3

disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expecations." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 134 S. Ct. 568, 583 (2013).  "Only under *extraordinary circumstances* unrelated to the convenience of the parties" should a court deny a party's request to enforce a forum-selection clause.  *Id*. at 581 (emphasis added).  "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to [or dismissal in favor of] the forum for which the parties bargained is unwarranted." *Id.*

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id.* at 580.  The *forum non conveniens* analysis entails the same balancing-of-interests that courts typically conduct in considering motions to transfer venue pursuant to 28 U.S.C. § 1404(a), wherein the district court "must evaluate both the convenience of the parties and various public-interest considerations." *Id*. at 581.  The presence of a contractually valid forum-selection clause alters this calculus in certain key respects: the district court gives no weight to a plaintiff's choice of forum and "should not consider arguments about the parties' private interests" because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 581-82.  As a consequence, a court faced with a motion for *forum non conveniens* based on a contractual forum-selection clause considers only public-interest factors such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law."  *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

### III. ENFORCEMENT OF THE FORUM-SELECTION CLAUSE WITH RESPECT TO WACKER AG

The forum-selection clause that Defendants seek to enforce here states simply that Munich, Germany shall be the "exclusive place of jurisdiction."  (Wacker AG Mot. 3)  The clause governs "[t]his Agreement . . . and the legal relations between the parties hereto."  (Wacker AG Reply 7,

1  ECF 40)  Because Wacker AG is the only defendant party to the Supply Agreement, the Court will
2  address the forum-selection clause primarily with respect to Wacker AG's Motion to Dismiss.
3  　　　The thrust of Plaintiff's argument against dismissal for *forum non conveniens* is that
4  countervailing factors militate against enforcing the forum selection clause.  (Pl.'s Opp. to Wacker
5  AG 5-12).  Plaintiff does not dispute the facial validity of the forum-selection clause or that it
6  points to Munich, Germany as the contractual forum for claims relating to the Supply Agreement.
7  Rather, Plaintiff argues that enforcing the forum-selection clause would contravene California's
8  strong public policies against forfeitures of deposits and in favor of providing protection against
9  unfair and deceptive trade practices.  (*Id.* at 5-10)  Plaintiff also argues that it would be effectively
10 denied its day in court should this Court find that the case must be litigated in Germany.  (*Id.* at
11 10-12)  The Court addresses each of these arguments in turn.

12 　　　**A.   Forfeiture**

13 　　　Plaintiff urges that California law specifically codifies the state's public policy against
14 forfeitures and that sending Plaintiff's case to Germany would deprive Plaintiff of California's
15 statutory protection against forfeiture.  (*Id.* at 7)  Wacker AG argues that Plaintiff's contention is
16 "flat wrong" because California law only prohibits *excessive* forfeitures, and German courts have
17 similarly invalidated excessive contractual penalties and liquidated damages.  (Wacker AG Reply
18 4)  Moreover, Wacker AG contends that California's policy against forfeitures is not implicated
19 here because Wacker AG retained Plaintiff's deposit to recover a portion of the damages it
20 incurred from Plaintiff's repudiation of the Supply Agreement and, as such, it was not an
21 excessive forfeiture.  (*Id.*)

22 　　　The Court agrees with Wacker AG that Plaintiff has not sufficiently demonstrated that
23 enforcement of the forum-selection clause would necessarily contravene California's policy
24 against forfeiture.  "'To require that 'American standards of fairness' must . . . govern the
25 controversy demeans the standards of justice elsewhere in the world, and unnecessarily exalts the
26 primacy of United States law over the laws of other countries.'"  *Richards v. Lloyd's of London*,
27 135 F.3d 1289, 1295 (9th Cir. 1998) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 517

28
5
Case No. 13-cv-05599-BLF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

n.11 (1974)).  So, too, does presuming that Germany would not protect Plaintiff against a truly unjust forfeiture.  *See also Manetti-Farrow*, 858 F.2d at 515.

Plaintiff has not demonstrated that a German court would not afford Plaintiff protection from an excessive or punitive forfeiture, while Wacker AG has shown that a German court may. Similarly, although Plaintiff contends that "German law would enforce provisions of the Supply Agreement purporting to require forfeiture of Plaintiff's prepayments," (Pl.'s Opp. to Wacker AG 7), Plaintiff has not demonstrated that California law would not, in this situation, equally enforce a contract provision permitting Wacker AG to retain a prepayment deposit as partial damages. Plaintiff's forfeiture argument ultimately depends on speculation as to the *amount* of damages that a German court may award in enforcing the Supply Agreement, as compared to a California court, and that is not a "conflict [in laws] involving fundamental policy in California." *CQL Original Products, Inc. v. Nat'l Hockey League Players' Ass'n.*, 39 Cal. App. 4th 1347, 1357 (1995); *see also East Bay Women's Health, Inc. v. gloStream, Inc.*, No. C 14-00712 WHA, 2014 WL 1618382, at * 3 (N.D. Cal. April 21, 2014).  There is thus no public policy reason to deny enforcement of a forum-selection clause that the parties have "freely entered into."  *CQL*, 39 Cal. App. 4th at 1357.

### B.   Unfair Competition Law

Plaintiff next argues that California's UCL protections against unfair competition militate against dismissal because "[a]pplication of German law by a German court would also deny Plaintiff the opportunity to bring claims under the UCL."  (Pl.'s Opp. to Wacker AG 8)  Wacker AG contends that Plaintiff fails to acknowledge that Germany has unfair competition laws and that Plaintiff "provides no argument or evidence that German law does not provide an adequate alternative claim."  (Wacker AG Reply 5)

The Court need not decide whether German law provides an adequate alternative claim because the question before the Court is the enforcement of a contract's selection of *forum*, and not the Supply Agreement's choice of law provision.  "A forum-selection clause determines where an action will be heard, and is separate and distinct from choice of law provisions that are not

6

Case No. 13-cv-05599-BLF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

before the court." *East Bay*, 2014 WL 1618382, at * 3 (internal quotations omitted).  The *East Bay* court recently rejected a similar argument against a enforcing forum-selection clause in the § 1404(a) context, reasoning:

> [P]laintiffs' argument that [foreign district] laws might provide them with less protection than California's Unfair Competition Law is unavailing because it requires speculation as to the potential outcome of the litigation on the merits in the transferee forum and to consider whether that outcome would conflict with a strong public policy of the transferor forum at the outset of the action.  It may be the case that the transferee court may decide to apply the substantive law sought by plaintiffs.

*Id.* (internal quotations and citations omitted); *see also Universal Operations Risk Mgmt., LLC v. Global Rescue LLC,* C 11-5969 SBA, 2012 WL 2792444, at *6 (N.D. Cal. July 9, 2012) (collecting cases rejecting a choice-of-law attack against enforcing a forum-selection clause).

Here, the Supply Agreement contains a choice of law provision that is not before the Court.  Rather, the only matter for the Court to decide is whether the contractual forum takes precedence, and Plaintiff has not identified "a fundamental public policy underlying California's Unfair Competition Act that relates to *venue*." *East Bay*, 2014 WL 1618382, at *3 (emphasis in original).  Plaintiff's reliance on *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009), is unpersuasive.  As another court in this district has noted, unlike the statute at issue in *Doe*, the UCL does not contain an anti-waiver provision indicating a fundamental California public policy favoring application of California's consumer protections above the law of foreign jurisdictions.  *See Madanat v. First Data Corp.*, No. C 10-04100 SI, 2011 WL 208062, at * 4 (N.D. Cal. Jan. 21, 2011).  As such, Plaintiff has not met its burden to demonstrate that enforcing the Supply Agreement's forum-selection clause contravenes fundamental California public policy underlying the UCL with respect to venue.

### C.   Plaintiff's Ability to Access a Foreign Forum

Plaintiff finally attempts to draw the Court's attention to its financial inability to litigate in Munich, Germany arguing that "the extreme cost of litigating in Germany (due to attorneys' fees in Germany, as well as the need for multilingual translation) would effectively preclude Adema

7

Case No. 13-cv-05599-BLF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1  from having its day in court because it is on the brink of insolvency." (Pl.'s Opp. to Wacker AG
2  10; *see also* Decl. of Joe Wang, ECF 31-1)  Wacker AG avers, however, that it has sued Plaintiff
3  in Germany, and Plaintiff has already entered its appearance in that lawsuit.  (Wacker AG Mot. 1)
4  Plaintiff does not dispute this fact, which is fatal to its argument that it cannot afford to litigate in
5  Germany.  If anything, because Plaintiff has already committed to defending itself in Germany
6  against Wacker AG's claims under the same Supply Agreement at issue in this action, dismissal in
7  favor of the contractually-selected forum promotes efficiency by requiring all claims to be
8  litigated in one forum instead of two.

9        In contrast to the employment contract cases that Plaintiff relies upon, this case involves an
10 arms-length agreement between sophisticated private parties.  *Cf. Murphy v. Schneider*, 362 F.3d
11 1133, 1141-42 (9th Cir. 2004).  Ultimately, whatever "inconvenience" Plaintiff would suffer by
12 being forced to litigate in Munich, Germany was "clearly foreseeable at the time of contracting."
13 *Bremen*, 407 U.S. at 17.  Plaintiff's financial difficulties, while sympathetic, cannot serve as an
14 end-run around its contractual agreement to litigate its claims in Germany.  As another court in
15 this district recently noted in reconsidering a forum-selection analysis in light of *Atlantic Marine*,
16 "the financial cost and inconvenience of litigating the case in [a foreign jurisdiction] . . . are the
17 sorts of 'practical problems'—related to making 'trial of a case easy, expeditious and
18 inexpensive'—which have been deemed private interest factors that may not be considered under
19 *Atlantic Marine*."  *Monastiero v. appMobi, Inc.*, No. C 13-05711 SI, 2014 WL 1991564, at *5
20 (N.D. Cal. May 15, 2014).  "While the Court finds [Plaintiff's] private interests compelling, it is
21 prohibited from considering these factors in conducting its analysis."  *Id.*

22     **D.**    **The *Forum Non Conveniens* Factors Support Dismissal of the Case**

23       A court faced with a motion for *forum non conveniens* based on a contractually valid
24 forum-selection clause considers only public-interest factors such as "the administrative
25 difficulties flowing from court congestion; the local interest in having localized controversies
26 decided at home; and the interest in having the trial of a diversity case in a forum that is at home
27 with the law."  *Atlantic Marine*, 134 S. Ct. at 582 n.6.  Plaintiff's choice of forum and its private

convenience interests merit no weight. *Id.* at 581-82. Here, Plaintiff argues that California has "special interest" in the dispute because Plaintiff is a California corporation, Plaintiff and Wacker USA "conducted business in California," and Wacker USA "administered deliveries, payments and negotiations in California from its offices." (Pl.'s Opp. to Wacker AG 6)

Although the Court may consider "the local interest in having localized controversies decided at home" as a public-interest factor against dismissal for *forum non conveniens*, Plaintiff has not demonstrated that the local interest here is in any way exceptional or unusual enough to justify upsetting the parties' settled expectations. When the parties' contract contains a valid forum-selection clause, that clause "represents the parties' agreement as to the most proper forum" and should be "given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 134 S. Ct. at 581 (internal quotations omitted). "The enforcement of valid forum-selection clauses, bargained for the by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (internal quotations omitted). "In all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Id.* at 583.

Other than California's interest in conduct that occurs within its borders, Plaintiff has not identified—either in its brief or at oral argument—any special interest that brings this case into the realm of the exceptional or the unusual. Public interest factors "will rarely defeat a transfer [or *forum non conveniens*] motion." *Id.* at 582. That is the case here. Finding otherwise would authorize any party to defeat a contractually valid forum-selection clause by racing to the courthouse in its home forum. Accordingly, the Court finds that the forum-selection clause in the Supply Agreement between Plaintiff and Wacker AG is enforceable and mandates dismissal of Plaintiff's contract claims on the ground of *forum non conveniens*.

## IV.  SCOPE OF THE FORUM-SELECTION CLAUSE

Having found that the Supply Agreement forum-selection clause is enforceable, the Court turns to the parties' arguments regarding the clause's scope.

### A.  The Forum-Selection Clause Applies to Plaintiff's Claims Against Wacker USA

Defendants contend that the clause encompasses Plaintiff's UCL claims and all of its

9

Case No. 13-cv-05599-BLF
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

claims against Wacker USA. (Wacker USA Mot. 3-4; Wacker AG Mot. 7-8) Plaintiff argues against enforcing the forum-selection clause but does not really address whether its claims against Wacker USA, which is not a party to the Supply Agreement, can be maintained independently of its claims against Wacker AG should this Court decide to enforce the forum-selection clause.

The Ninth Circuit has noted that when "the alleged conduct of the non-parties [to a contract] is so closely related to the contractual relationship," the "forum-selection clause applies to all defendants." *Manetti-Farrow*, 858 F.2d at 514 n.5. Here, Wacker USA's conduct is closely related to the contractual relationship between Wacker AG and Plaintiff: Wacker USA is alleged to have been the primary contact after polysilicon shipments commenced under the Supply Agreement. (Compl. ¶ 21) Moreover, Plaintiff's theory of Wacker USA's liability depends on the allegation that Wacker USA aided and abetted Wacker AG at all times in its allegedly unfair, illegal and tortious conduct with respect to depressing polysilicon spot market prices and enforcing the Supply Agreement against Plaintiff. (*Id.*, ¶¶ 21, 90) As such, the Court finds that Wacker USA's alleged misconduct is sufficiently close to the contractual relationship to warrant application of the forum-selection clause to all defendants.

### B.   The Forum-Selection Clause Applies to Plaintiff's UCL Claim

"[F]orum selection clauses can be equally applicable to contractual and tort causes of action." *Manetti-Farrow*, 858 F.2d at 514. The scope of a forum-selection clause is a matter of contract, and the parties' intent governs. *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982). The parties do not appear to dispute that a proper reading of the Supply Agreement, wherein forum-selection and choice of law are a single section, provides that the forum-selection clause governs "[t]his Agreement . . . and the legal relations between the parties hereto." (Wacker AG Reply 7) Thus, whether the forum-selection clause applies to Plaintiff's UCL claim "depends on whether resolution of the [UCL] claim relates to [the Supply Agreement and the legal relations between the parties]." *Manetti-Farrow*, 858 F.2d at 514 (citing

*Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir.1983)).[3]

Plaintiff contends that its UCL claim stands apart from the Supply Agreement because "Wacker's violations of the UCL by dumping polysilicon on the market below cost may be resolved without referencing the terms of the Supply Agreement, and falls outside the ambit of the Supply Agreement." (Pl.'s Opp. to Wacker AG, 13) Defendants argue that the UCL claim relates to interpretation of the contract because Plaintiff cannot demonstrate economic injury absent the terms of the Supply Agreement. (Wacker AG Reply 7-8; Wacker USA Reply 6-8, ECF 32)

The Court is persuaded that Plaintiff's UCL claim falls within the ambit of the forum-selection clause because the UCL claim relates to the parties' legal relations under the Supply Agreement. Plaintiff's theory of unfair competition lies in Defendants' allegedly intentional depressing of polysilicon prices while simultaneously inducing Plaintiff to enter into a fixed-price agreement. (Compl. ¶¶ 82-84) In the absence of the Supply Agreement, Plaintiff would have benefitted from the decreased polysilicon prices and would not have standing to bring a claim under the UCL. (Wacker AG Reply 12-13; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (UCL, as amended by Proposition 64, requires plaintiff to have lost money or property to have standing to sue under the UCL)) Moreover, adjudicating Plaintiff's UCL theory on the merits would require a fact-finder to determine issues that pertain to the validity of the Supply Agreement and to its terms, including whether Defendants have any defenses under the agreement. As such, Plaintiff's UCL claim is related to the legal relations between the parties to the Supply Agreement and embraced by the scope of the forum-selection clause.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motions to Dismiss with respect to all claims. This case is DISMISSED on the ground of *forum non conveniens*. The

---

[3] Plaintiff's reliance on *Arreguin v. Global Equity Lending, Inc.*, No. C07-06026 MHP, 2008 WL 4104340 (N.D. Cal. Sept. 2, 2008), is unpersuasive here because the Court's analysis flows, first and foremost, from the language of the clause at issue. The undisputed reading of the Supply Agreement's forum-selection clause indicates that it broadly encompasses the parties' legal relations under the agreement, not simply to "enforcement . . . construction or interpretation," as was the case in *Arreguin*. *See id.* at *4.

Clerk of the Court shall close the case file.

**IT IS SO ORDERED.**

Dated: July 22, 2014

_____
BETH LABSON FREEMAN
United States District Judge